And everyone else be seated. Nick Case on our docket. Everyone seems ready. Ms. Tufaro v. Board of Regents. Number 23-6039. Ms. Davies? Yes. Okay. The last time I was up here, I forgot to look at the screen, so I'm going to do better. Oh. It's way over. I'm at Police Court. Shanna Davies for Anthony Tufaro. So today, the landscape of employee speech has been refined in a manner that favors free speech. Citizens and people citizens, even doctors, have First Amendment rights that is protected, even if they are government employees. There's a new case that was decided, I think, three or four days ago, called WEANED, L-I-N-D-K versus free, which talks about this idea of public speech and freedoms which even public employees may have. Can you give us a citation on that? Okay. I should be able to do that. And if it's not in your brief, you need to submit a 28-J letter also. I will. I think it is in the brief, but I didn't put it here. Well, I thought you said it was four days ago. You're right. It is four days ago, so it's not in the brief. I'd be surprised. Well, I'll get it organized together. So in that case... In what jurisdiction? 11th Circuit, I think. Oh, thank you. So in the case, the court decided that public employment doesn't actually necessarily prohibit speech. And we know that in this case because Dr. Tafaro, who was employed by the University of Oklahoma in the plastic surgery division of the organization, was allowed to make speeches of public concern that did not touch his specific job duties. What Dr. Tafaro did when he became an employee at OU was he discovered that the oral surgery department, where he's not affiliated, was doing subpar work, was doing some concerning things with the money that was coming in, how they were doing things with it. And so he was complaining. Honestly, he was complaining quite a bit. But it wasn't one of his job duties to complain outside of his division. And so according to Pickering, this new link versus free, and other cases, Dr. Tafaro's speech is protected. And he should not have been terminated for exercising his right of free speech. Well, but the speech he engaged in here may have been outside of his division, but it was still within the University of Oklahoma. And so how does that make a difference? And in your view, when would internal disputes or discussions within employers and government agencies ever be private speech? Well, Dr. Tafaro's speech in his division is protected. Dr. Tafaro's speech is not protected when he is outside of his workplace. Does it matter that he made it to his own chain of command, his complaint? No, not to his chain of command, no. That doesn't make any difference in the analysis of who he makes the complaint to? I don't think so. If it's outside of his division, if it's inside his division, it's protected. I think that's been the speech, the argument, forever. When you say it's been the argument forever, do you have some authority that says that it's irrelevant that he makes the complaint to his own chain of command? I may have said that backwards. Okay, so, sorry, I'm coming in before somebody today. So, when you focus on the job duties in Dr. Tafaro's division, Dr. Tafaro didn't have any duties in the oral surgery department. So, it's hard for me to follow, because there were six separate complaints, communications, and I think you're focusing on number six of those, which was a complaint about failure to provide services to someone in the oral surgery department? Correct, that is correct. Okay, is that what we're talking about? Yes, let's narrow it down, yes. Thank you. Yes, and based on Free, the new case that just came out. You do realize that we're not bound by the 11th Circuit? No, I know, but it's at least instructive, at a minimum. That case has been very helpful. In that case, the court, the facts were the individual discovered something within a division, complained about it, and the court said that was acceptable. So, what we're doing here is evaluating what the speech is, whether that speech is protected, and whether or not Dr. Tafaro should not have been terminated for doing so. Was Dr. Tafaro terminated, or was his contract not renewed? His contract was not renewed. However, it's the same as being terminated because he no longer was allowed to work at the University of Oklahoma. But it's not the same. I mean, the handbook from the University of Oklahoma that was being used at that time, which I believe was negotiated part of his employment, clearly has two different tracks for when someone will no longer be employed at the University of Oklahoma. The non-renewal track and termination, and they have different procedures that apply. So, I don't think we can just gloss over those points. In fact, I think they're dispositive of some of the claims here, right? Well, but his non-renewal was, in effect, termination. I mean, we consider his position to be almost an employee at will. However, so when— Well, how can he be an employee at will if he's not in an indefinite period? If it's renewed, he's got one year. That's not an employee at will. Well, it's very similar because these contracts are normally automatically renewed every single year. And the only reason his wasn't was because he made complaints. Well, even if you're ordinarily renewed every single year, that doesn't change the fact that it's a contract for a definite term. It is, except that the practice is that they are automatically renewed, and he was told it would be automatically renewed when he was employed. That is a different issue than whether it's an at will, right? To be at will, it has to be indefinite. Yes, but the way OU operated and the way they explained his contract to him, it was indefinite. So the new cases that we have, it's called Wonky v. Freed. These are the series of cases that have said that citizens and physicians do not give their first amendment rights just because they're public employees. And this is what happened here. But that's no different than the Tenth Circuit law. No, it isn't. But it's a new case, and this case was really very supportive. It deals with a gentleman who had a public-facing website, but he was also an employee, and he was posting on the website. Somebody came over and wanted to make changes to the website, and they had a disagreement. And the law allowed him to continue with his website, even though there were disagreements with the other people who wanted to take it down. But here we're not talking about whether he has first amendment rights or not. We're talking about the distinction between private and public speech. And as I read the record, Dr. Taffaro was making complaints, as you said, complaining a lot. Yes, he was. But most of those were not because he was essentially saying, well, there's matters of great public concern that I need to raise the attention of those in my chain of command. They were, this is how it impacts me. You're not treating uninsured patients, so I have to. These sound exactly like internal private complaints within an organization or agency, right? Well, no. He wasn't talking about the patient care. He was talking about the fact that when they were doing the patient care, they were not doing it correctly and or they were not billing for it correctly. And that was outside of his division, and he should, according to the way it all works, he should be allowed to complain about that. I thought he was complaining that they weren't taking patients that they should have, so he had to do it. No, no. That was not the complaint? No. That's one of the complaints. It's number six. Well, his complaint was that in order to care for them properly since the other people weren't doing them, he had to step in. Yes, so that doesn't mean that he wasn't also complaining about their inability to properly care for their patients at all. What's the overall public concern that he's expressing there, speaking to? He's speaking to lack of good quality care in that division, lack of proper financing in that division, and those are the two big ones, yes. But there were several things, obviously, that he did complain about. And he made the complaints within the university system. He didn't write a letter to the editor? No, he did complain to the oral surgeons first. I want to direct your attention to the handbook. You complained that the district court relied on a version of the handbook that's not the appropriate version. But we are at the summary judgment stage at this point, and you've not come forward and said, this is the handbook that applies. At some point, don't you have to identify the handbook version you're relying on? Yes, but the version that they relied upon was not the correct one. You have not identified any way in which the version they rely upon is different in any meaningful way as relevant to this case as the one you rely on, or the one that might have been in effect at the time. Do you think at the summary judgment stage you've got an obligation to tell us why it matters which version was relied on? We don't know either which one it was. That's the problem. We don't know what he was relying on. So you don't know what handbook is relevant to the determination of this case? It was not the one that was listed in the briefing by the other side. And there is a new one now, but it wasn't contained in the briefing when we did it. Well, you cite in the complaint, you cite a handbook. Is that the relevant handbook? Yes, it is. I'm sorry. OK, have you pointed to any differences between the version you cite in the complaint and the version that the district court relied on? I don't think that's in the brief, no. Well, are there any? I believe there are. Are there any meaningful differences that make any difference to the resolution of your claim? I don't know. You don't know? I don't know. And you can't point to any? Not today, I can't now. Well, isn't this kind of the last chance to do that? We also are arguing that the court did not properly adjudicate the Burke tort and that we should be allowed to make that claim. And we also are arguing that section, district court section 22 of the Oklahoma, sorry, article 2 of section 22 of the Oklahoma constitution provides for Dr. DeGuaro's ability to prevail in this matter related to the civil rights. I'm so sorry. Is there a private right of action under the Oklahoma constitution provision? Yes. And what's your best case for that? I don't have the cases in front of me on that, but I will settle in that. Hasn't the legislature said that the Oklahoma Tort Claims Act is the only way to bring a constitutional claim in Oklahoma? Bring a claim based on the Oklahoma constitution, I should be more precise. I think we can make one directly on the Oklahoma constitution. That would be contrary to the Oklahoma statute, would it not? I believe that we can. If not, then we would follow the statute and use the Oklahoma constitution for that purpose. Thank you. Your time has expired. Thank you. May I please record? Sorry. No, no. You woke us up. Dan Whiteman for the appellees. Good morning. It is undisputed in this case that Dr. DeFaro was hired by way of an express one-year contract. The contract would automatically renew at the end of its term unless at least 180 days prior to the expiration of the contract, the university notified Dr. DeFaro that it would not be renewed. It is undisputed in this case that the university did notify Dr. DeFaro that it was not renewing his contract. Those facts, those undisputed facts, resolve most of the smorgasbord of claims brought by Dr. DeFaro in the district court and then re-raised here on appeal. What do we do about the handbook? We've got the court granting a motion to dismiss by going on the internet and pulling up a version of the handbook that may or may not be the handbook that governs. Now, I understand at summary judgment stage, the plaintiff has to provide the handbook, but what about on the motion to dismiss? Well, Judge Jones did an analysis of that, right? And he found, at least for the first two elements, that they recited the handbook in their complaint that is central to their claim. He felt based on that, he could go out and look at the internet, find the handbook that had not been amended since 2017, so it would have been the proper handbook. I'm sorry, the microphone is really bothering me. And rely on that. But the decision on the motion to dismiss includes reliance on provisions from the handbook off the internet that aren't in the complaint. Well, okay, and I will get back to that, but I want to finish the thought that I had before. The plaintiff, I mean, the court felt it could rely on it. The plaintiff has attached what it believes to be the portion of the contract, which I think is appendix 995. It's in a footnote that they put in one of their briefs. And those are identical to what the court relied upon. Now, to get back to your point, the court relied upon the handbook, but it wasn't necessary for the court to rely upon the handbook. The court could have made the same ruling just based on the petition, right? The petition says in paragraph 17 to 20 that we have an express written contract. The petition says that the handbook, thus the contract, requires 180 days' notice. The petition says in paragraph 23 that 180 days' notice was given. Does it say that it had to be renewed each year? What does it say about the length of the contractual term? What it says is when you have the consecutive term contract that it would automatically renew. This is in the complaint? Well, the complaint recites that provision in paragraph 22. Okay, so the complaint recites specific language from the handbook, is that right? That's right, Judge. And it recites the language saying that this is for one year. Then we can, for any reason, decline to renew so long as we give you 180 days' notice. That's correct. All that is in the complaint? Yes, Judge. So you're saying that's all you needed? The judge didn't rely on anything more than that? That's all we needed because what happened after that— Was there anything that the judge said was in the handbook beyond what was in the complaint that was necessary for the district judge's dismissal? The judge did look at other parts of the handbook, but it wasn't necessary for the dismissal because once you learn through the complaint that the university could not renew the contract just based on notice which was given, everything else complained about by the plaintiff was termination. If you look through the complaint, it says can't terminate, can't terminate, can't terminate. The judge looked at the contracts, it said can't terminate, can't terminate, can't terminate. So he wrestled with some of that. But Judge Jones finally came back around and said, but look, I'm wrestling with this termination issue and I don't have to. Are the reasons why Dr. Jafara was not renewed, are those relevant at all to anything we have to decide? No. No. Now, you know, the big complaint of the plaintiff here, of Dr. Jafara, is he says the reason that we didn't renew was because of his protected speech. Now, of course, we take issue with that. We don't think that's the case at all. But that has nothing to do with the terms of the manual or the contract? Yeah, it has nothing to do with the terms of the manual or contract. How do you respond to the presentation that comes out in the briefs and we just heard that this handbook may have called or allowed for OU to not renew and go through the procedures to do that. But in reality, Dr. Jafara was told he would be essentially renewed and that everyone else gets renewed. And so the only conclusion that can be reached was the non-renewal was, in fact, retaliatory. Well, they're trying to make an implied contract out of an express contract, which in Oklahoma you can't do. That's the Jones versus University of Central Oklahoma case, right? Your express contract cannot coexist with an implied contract. So I don't think that holds up. I don't know that their argument was there was this implied contract, thus the only reason we could have terminated him was for these illegal reasons, right? I can see where they would try and go there, but I don't think that's the necessary outcome of their argument. But even if there is their argument, Judge Jones examined those reasons and he found that the speech was made pursuant to the official duties of Dr. Jafara. In other words, in furtherance of his employment. There is no indication that these were private statements. Dr. Jafara speaking as a citizen, trying to expose wrongdoing. He sent emails from the OU email server, complaining about things happening at OU, most happening within his division, some happening with people that he works with, and he sent those communications only to people with OU email addresses. So this was entirely internal, entirely about the work that he was doing. In fact, in his deposition, I think this is appendix 743, he is asked, why are you sending these communications? And Dr. Jafara's response is, if one of your partners was running a private practice out of that office and billing hundreds of thousands of dollars, would you think of reporting it to your boss? He ties it right to his employment. And then he goes on to say, that also impacted my life because I was now seeing patients that they initially saw and rejected treatment, rejected care. Tied right to the employment. He's asked just a couple of questions later. Would you consider reporting these issues as part of your employment with the University of Oklahoma? His response, of course. So what he's complaining about was clearly in fervor of his employment and as such, it's not protected speech. I think you can look to the Rohrbaugh case, which stands for this pretty clearly. I think Trent v. Oklahoma is probably the best case on this because it's very close on the facts. And this court found that communications about billings on in the workplace to other people in the workplace are not given First Amendment protection. Let me just address very briefly a couple of items that counsel raised at the end. Counsel raised the Burke tort. That's the exception of the appointment at Will Doctor in Oklahoma. As this court, I think, rightfully pointed out, Dr. Tavar was not an employee at Will. There's no Burke tort claim that can exist here. The Article 2, Section 22, Oklahoma Constitution claim. That's actually a very interesting claim, I think. Because in their briefs, plaintiffs fall back, Dr. Tavar falls back on the old Bosch rule. The Oklahoma Supreme Court had decided the Bosch case, which was on a very bad set of facts, were extended a direct cause of action under Oklahoma's due process clause. This was back in 2011. Is this the excessive force? That was the excessive force, yes. Courts wrestled with this. Because we had never extended Oklahoma constitutional claims directly before. And courts were really wrestling and stretching. The legislature stepped in and amended our Governmental Tort Claims Act and says it includes the constitutional claims, which includes a sovereign immunity, and you only lose that immunity under certain circumstances. The Supreme Court came back in 2017 and decided Barrios. And in Barrios, the Supreme Court recognized that constitutional claims were now under the Governmental Tort Claims Act. Barrios specifically said that the Supreme Court was no longer going to extend constitutional, make direct actions out of constitutional claims. I think it was called a... Oh, I don't remember what Justice Weirich called it at the time. But they weren't going to do that anymore. And then went further and said, and it's doubtful that these constitutional claims would exist under a common law. Courts that have looked at this since then, a couple of courts in the Western District, the Earless case, which is cited by Judge Jones, as well as the Koshner case, which was decided close in time to the Earless case, both would not extend an Article 2, Section 22 direct action because the Oklahoma Supreme Court had not said that it could be extended, and because of sovereign immunity, those claims don't exist. Let me ask you about disposition of the appeal in one respect. Our general practice is to tell the district courts that if they've disposed of all the federal claims, summarily, summary judgment or dismissal of the complaint, then it should dismiss without prejudice the state law claims, and let them be pursued in state court. The district court did not do that in this case. The Burke case claim is a state law claim. The Oklahoma Supreme Court has said that a dismissal of an at-will employee against public policy can be pursued in a cause of action. Why shouldn't we let the Oklahoma courts decide whether dismissal in this circumstance, where you can not renew a contract for any reason you want, similar to at-will, and if that were contrary to public policy, you'd have a claim there too. They didn't really address that situation in Burke. Why shouldn't we let the Oklahoma courts decide that and order that the Burke claim just be dismissed without prejudice so it can be pursued in the state court? Well, Burke didn't specifically address that. There was a case, and it's cited in our briefs to the district court, at least, if it's not cited in the appeal brief, I'd be surprised. What's the name of that case? I don't have it at my fingertips. I apologize. But what the Supreme Court said in that case, it was a case where a party had tried to bring a Burke tort for a contract employee, and the Supreme Court made a distinction and said, even though there's a contract, we can have a Burke tort if there's no term in the contract. If the contract has no duration, then they're an employee at will, and we can have a Burke tort. What that tells us, the implication, the flip side implication of that, is you only have a Burke tort if there's a will. To say that something's sufficient to support a cause of action doesn't mean that it's necessary to support a cause of action. That's a common error, it seems to me. Well, I think the way it was discussed in that case, I mean, I think that the Oklahoma Supreme Court, I think the way they discussed it, they... It'd be nice if you could refer to that case so we can look and see. It would be, and I'm sorry I don't have it at my fingertips. You could file a 28-J supplemental with the case in it. Thank you. I will do that. And if I may, he's running out of time. Yeah. As I look at it, the Oklahoma privilege, attorney-client privilege, is narrower than the federal attorney-client privilege. And the court here applied the federal attorney-client privilege law, yet there were Oklahoma claims before the court. Was that error? It was not error. In the first place, a large bulk of the Dr. Jafari's claims were federal-questioned claims, and so is the federal common law that we fall back on. Secondly, Oklahoma's attorney-client privilege is more narrow as it applies to public entities. So, for example, the university. We have claims here, one, against individuals. And also, two, in their motion to compel on the attorney-client privilege issue, Dr. Jafari didn't raise that statutory narrowing. So, I think that's a way. Thank you. Thank you. Thank you. Thank you, counsel. Counselor excused. Case is submitted.